**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

**JOSEPHINE SMALLS MILLER,**
        -Plaintiff

        -v-                                                                                   **CIVIL 3:05 CV 402 (CFD)**

**PRAXAIR, INC., ET AL.,**
        -Defendants

## RULING ON MOTION TO COMPEL (DKT. #119)

This is an employment discrimination action brought by the plaintiff against her former employer, Praxair, Inc. ("Praxair"), and various officials of Praxair. The plaintiff was formerly in-house counsel for Praxair and its predecessor for twelve years. The plaintiff claims, *inter alia*, that she was unlawfully discriminated against because of her race and retaliated against for engaging in protected activities under Title VII of the Civil Rights Act of 1964 and state discrimination statutes. The plaintiff resigned from her employment effective September 13, 2002. Presently before the court is the plaintiff's Motion to Compel **[Dkt. #119]**. The motion is **GRANTED** in part and **DENIED** in part.

### I. STANDARD

In deciding discovery issues, the court is afforded broad discretion. See Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir. 2004). "Parties may obtain discovery regarding any matter,

not privileged, that is relevant to the claim or defense of any party...Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Relevance is to be "broadly construed, and a request for discovery should be considered relevant if there is **any possibility** that the information sought may be relevant to the claim or defense of any party." Favale v. Roman Catholic Diocese of Bridgeport, No. 3:04CV1220(DJS), 2005 U.S. Dist., LEXIS 27154 at *8-9 (D. Conn. Nov. 8, 2005) (quoting Merrill v. Waffle House, Inc., 227 F.R.D. 467, 470 (N.D. Tex. 2005)(emphasis added). The party resisting discovery bears the burden of showing why discovery should be denied. Blakenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975). The court, in deciding discovery issues, is afforded broad discretion. See Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir. 2004).

While the Federal Rules mandate a liberal standard, they also afford courts the means to limit discovery. Rule 26(b)(2) provides in relevant part:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules, and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking

> into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

The objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." Id. (internal citations and quotation marks omitted). See also Kimbro, 2002 U.S. Dis. LEXIS 14599 at *2 (stating that "the objecting party . . . bears the burden of showing why discovery should be denied")(citation omitted).

## II. DISCUSSION

### Requests Relating to Outside Counsel Investigation

At the outset, the court notes that plaintiff's discovery requests pertaining to the investigation conducted by Holland & Knight LLP, defendants' outside counsel, have already been ruled on. See Dkt. ## 195, 200. The court previously conducted an *in camera* inspection and found that the Holland & Knight report is protected by the attorney-client privilege, work-product doctrine, and self-critical analysis doctrine. In addition, the court found that requiring the defendant to respond to factual questions regarding the investigation would lead to an impermissible

3

disclosure of privileged attorney-client communications and mental impressions of counsel. As such, the Motion to Compel is **DENIED** as moot with respect to Interrogatory No. 9, Request No. 14, and Request No. 20.[1]

**Requests for Documents Subsequently Produced**

Based on the representations of defense counsel that the defendants have subsequently produced the requested documents, and the absence of objection by the plaintiff, the Motion to Compel is **DENIED** as moot with respect to Requests Nos. 6 and 18.

**Requests for Policy Statements**

With respect to the request for a copy of defendants' business ethics and integrity policy for the period 2000 to 2003 (Request No. 16), the motion is **GRANTED**. Any business ethics and integrity policies in effect from, or created in, the years 2000 to 2003 which have not been produced thus far must be produced. The documents are clearly relevant to the plaintiff's claims "that she was being forced [by] members of the legal department and human resources to engage in actions that would violate the business ethics and integrity policy." (Dkt. # 119 at 10). Thus, the Motion to Compel is **GRANTED** with respect to Request No. 16.

With respect to the plaintiff's request for all of Praxair's human resource policy statements for the period 2000 to 2003, the

---

[1] The defendants have already responded to Interrogatory No. 8.

4

motion is **GRANTED**. Any human resource policy statements in effect from, or created in, the years 2000 to 2003 which have not been produced thus far must be produced. The court finds unavailing the defendants' argument that production of the policies would be too burdensome because there is no publication or group of documents entitled or referred to as Praxair's "human resources policy statements," and that various policies exist as separate documents. (Dkt. # 180 at 17). In addition, the policies are relevant because the plaintiff has indicated on multiple occasions in her deposition that she believes that statements indicating that human resources personnel did not like the advice she was giving were related to the complaints she raised regarding the failure of the Diversity Initiative. (Pl's Dep. at 189, 192, 194). Therefore, the Motion to Compel is **GRANTED** with respect to Request No. 17.

### Requests for EEO-1 Reports, Affirmative Action Plans and Statistical Compilations

With respect to the plaintiff's requests for a copy of all of Praxair's EEO-1 Reports for the years 1999-2003 (Request No. 7), and a copy of any and all records or documents that establish the number by year of all African-American employees in all band levels at each location of the company for the years 1999-2003 (Request No. 12), the requests are **GRANTED**. The court notes the defendants' argument that the degree of success of Praxair's diversity and affirmative action efforts are irrelevant to the plaintiff's claims that she was unlawfully discriminated against because of her race

and retaliated against for engaging in protected activity. However, the EEO-1 reports and statistics establishing the number of African-American employees for the years 1999-2002 are at least tangentially relevant in that they may shed light on the plaintiff's contention that she was retaliated against for pointing out the failures of Praxair's Diversity Initiative, and as such must be produced. See Hollander v. American Cyanamid Co., 895 F.2d 80, 84-85 (2d Cir. 1990). Thus, the Motion to Compel is **GRANTED** with respect to Requests Nos. 7 and 12.

With regard to the plaintiff's request for a copy of all of Praxair's affirmative action plans for the years 2000 to 2003 (Request No. 18), the request is **DENIED.** As with the EEO-1 reports and statistical compilations, the affirmative action plans may be tangentially relevant in determining Praxair's motive to retaliate against the plaintiff for pointing out the failures of the Diversity Initiative. However, the court finds that the burden of complying with this request significantly outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii). "A court must limit the frequency or extent of the use of any discovery method . . . when the burden or expense of the proposed discovery outweighs its likely benefit . . . ." 6 Moore's Federal Practice 3d § 26.60[5](Matthew Bender 3d ed.). The defendants have represented that the requested plans would fill more than ten banker's boxes and have been prepared locally at dozens of locations. Moreover,

6

courts in the Second Circuit have recognized that significant segments of affirmative action plans are protected from discovery under the self-critical analysis privilege. See <u>Cobb v. The Rockefeller Univeristy</u>, No. 90 Civ. 6516, 1991 U.S. Dist. LEXIS 15278 at *6 (S.D.N.Y. October 24, 1991); <u>Boykin v. Viacom Inc.</u>, 96 Civ. 8559, 1997 U.S. Dist. LEXIS 11332 (S.D.N.Y. August 5, 1997). In <u>Cobb</u>, the court held that only the "raw statistics" contained in an affirmative action plan were discoverable and that all analysis contained in the plans was protected by the self-critical analysis privilege. <u>Cobb</u>, 1991 U.S. Dist Lexis at *6. The court has already ordered the defendant to turn over the EEO-1 reports and statistics establishing the number of African-American employees for the years 1999-2002. Any statistics contained within the affirmative action plans are likely to be found within the EEO-1 reports and statistical compilations. Therefore, any non-privileged statistics contained in the affirmative action plans are unreasonably duplicative and "obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(ii). Thus, the Motion to Compel is **DENIED** with respect to Request No. 18 for a copy of all of Praxair's affirmative action plans for the period 2000 to 2003.

**Requests for Praxair's Federal Government Contracts**

The plaintiff's request for a copy of all federal government contracts to which Praxair was a party during the period 2000 to

7

2003 (Request No. 19) is **GRANTED** in part and **DENIED** in part. The request is **GRANTED** only to the extent that the plaintiff has agreed to narrow her request to only a copy of the contract with NASA. The NASA contract forms the basis for the plaintiff's claim under the Federal False Claims Act, and is therefore discoverable. Although the defendants argue that the plaintiff lacks standing to bring a claim under the False Claims Act, their motion to dismiss that claim was denied without prejudice by the district court judge. See Dkt. # 98. As such, the NASA contract is discoverable, and Request No. 19 is **GRANTED** to the extent it seeks only the NASA contract.

### Requests Concerning Union Activities in California and Sal Castillo

The plaintiff has made numerous requests for documents which, she alleges, will demonstrate that other, non-supervisory, Praxair employees deliberately misled her into supplying false and misleading information to the National Labor Relations Board (NLRB) in response to an unfair labor practice charge filed in California in 2002. The court agrees with the defendants that whether the plaintiff was given false or misleading information by Sal Castillo, a Human Resources Manager, and whether the plaintiff presented such information to the NLRB, has no bearing on whether plaintiff was discriminated against by her supervisors because of her race or retaliated against for engaging in protected activity under Title VII or Connecticut discrimination statutes.

Despite the lack of relevance, Praxair has already provided plaintiff with more than enough documents regarding the union organizing campaign and unfair labor practice charge filed in California in 2002. In response to Request No. 17, which seeks all documents relating to the unfair labor practice charge, Praxair produced the entire legal department case file and has represented that it is unaware of any other documents related to this charge. In response to Request No. 9, seeking all documents relating to communications between "Sal Castillo, John Grabowski, Del Shannon, Jim Carey, Jerry LeClaire, or any other member of Human Resources, John Billecci, James Baughman, Karl Koch and/or any manager or supervisor of the Oakland, California Praxair Distribution, Inc. facility regarding the union organizing campaign of March-June 2002," Praxair provided plaintiff with its entire case file related to the union organizing campaign. (Dkt. # 180 at 29). In response to Request No. 6, the defendants produced a chart of planned wage increases for the Oakland facility requested by the plaintiff and which she asserted was "highly relevant to establish that employees John Billecci and Sal Castillo knowingly withhold [sic] information from Plaintiff that resulted in her filing a false and misleading position letter to the NLRB." (Dkt. # 119 at 13). Given the general lack of relevance of the requests pertaining to the union organizing campaign, and the large volume of documents already produced by the defendants in response thereto, Request No. 9

9

seeking all documents to or from any human resources employee in the entire corporation related to the union organizing campaign is overbroad and unreasonable. As discussed above, in response to Request No. 17, Praxair produced the entire legal department case file relating to the unfair labor charge and has represented that it is unaware of any other documents related to this charge. Therefore, the Motion to Compel is **DENIED** with respect to Requests Nos. 9 and 17.

Similarly, Requests Nos. 7 and 8 seeking Sal Castillo's entire personnel file and all documents relating to any investigation or discipline to him at any time during his employment with Praxair are **DENIED**. In effect, the plaintiff is arguing that she should obtain all personnel documents related to Castillo to show that he was never disciplined for allegedly giving the plaintiff information that caused her to supply misleading information to the NLRB. Again, whether Castillo provided inaccurate information to the plaintiff, and whether Castillo was investigated or disciplined for misleading the plaintiff with regard to NLRB matters, is not in any way relevant to whether the plaintiff was discriminated against because of her race or retaliated against for engaging in protected activity under Title VII or Connecticut discrimination statutes. Moreover, Praxair is willing to stipulate that Mr. Castillo was never disciplined or reprimanded for allegedly misleading plaintiff into supplying allegedly false information to the NLRB. (Dkt. # 180

at 32). Accordingly, the Motion to Compel is **DENIED** with respect to Requests Nos. 7 and 8.

### Requests Concerning Christina Mommens

The plaintiff's requests for all documents related to communications between Christina Mommens, Executive Vice President Paul Bilek, Safety Representative Steve Hine, and/or CEO Dennis Reilly regarding support staff participation in an employee safety meeting (Requests Nos. 10 and 11) are **GRANTED**. The plaintiff contends that Mommens, a white secretary, sent an email to Bilek and all of the support staff inviting the staff to join Mommens in raising concerns about ergonomics in the workplace. According to the plaintiff, CEO Reilly was made aware of the complaints and directed former General Counsel David Chaifetz to "take care of your disgruntled employee." (Pl's Dep. at 131-34). In addition, plaintiff claims that Chaifetz instructed her to fire Mommens if she filed a workers' compensation claim. These documents are potentially relevant in that they may bolster plaintiff's claim that Reilly instructed Chaifetz to take retaliatory action against the plaintiff for raising concerns regarding the workplace. As such, Requests No. 10 and 11 are **GRANTED**.

### Request Concerning Randi Larsen E-mail

The parties agree that the defendants have already produced the requested e-mail from Randi Larsen to former Chief Human Resources Counsel John Day commenting on the work performance of

three African-American females.  However, the plaintiff believes that the e-mail was subsequently forwarded by John Day to former General Counsel David Chaifetz, and she has requested a copy of that forwarded e-mail.  The court accepts defense counsel's representation that it has searched for, and has been unable to locate, any such forwarded e-mail.  Therefore, the Motion to Compel is **DENIED** with respect to Request No. 16.

### Request Concerning Outsourcing Memorandum

The plaintiff has requested a copy of a memorandum dated on or about November 15, 2000 from Chaifetz regarding a review by the Legal and Risk Management Departments for purposes of possible outsourcing of litigation management (Request No. 19).  The court accepts defense counsel's representation that it has searched for, and has been unable to locate, any such memorandum.  Therefore, the Motion to Compel is **DENIED** with respect to Request No. 19.

### Request Concerning Stephanie Benjamin-Coleman Documents

Finally, Request No. 8 seeks all documents between members of Praxair's legal department regarding plaintiff's work performance and/or performance evaluations, plaintiff's work on Praxair's Diversity Initiative and diversity issues, and any issues related to the Stephanie Benjamin-Coleman termination and litigation. Despite their objections, the defendants have produced all documents responsive to the request except to the extent that the plaintiff seeks documents related to Ms. Benjamin-Coleman's

12

termination and litigation. According to the defendants, Ms. Benjamin-Coleman was separated from employment with Praxair in 2000 and brought claims of discrimination against the company after her departure. As the defendants point out, the Second Circuit has held that the proper scope of discovery in discrimination cases in employees "similarly situated" to the plaintiff in the case. <u>Hollander v. American Cyanamid Co.</u>, 895 F.2d 80, 84-85 (2d Cir. 1990). However, the court is unable to conclude that Ms. Benjamin-Coleman and the plaintiff are not similarly situated. Although Ms. Benjamin-Coleman was not an attorney, she was a black female employee involved in labor relations and employment matters for Praxair. In addition, the plaintiff asserts that "it was the treatment of [Ms. Benjamin-Coleman] and her impending termination that prompted Plaintiff, in part, to complain to CEO Dennis Reilly regarding the failure of Praxair's Diversity Initiative." As such, documents in the defendants' custody related to the termination of Ms. Benjamin-Colememan may contain information relevant to plaintiff's claims in this case. Therefore, the Motion to Compel is **GRANTED** with respect to Request No. 8, and the defendants must produce all documents related to the Stephanie Benjamin-Coleman termination and litigation that are not subject to the attorney-client privilege and work-product doctrine.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Compel is **GRANTED** in part and **DENIED** in part.

This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. See 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut, this 10th day of May, 2007.**

> **/s/ Thomas P. Smith**
> **Thomas P. Smith**
> **United States Magistrate Judge**